# In the United States Court of Federal Claims

No. 01-441 C
(Filed: June 21, 2012)
**TO BE PUBLISHED**

| | |
|---|---|
| RED RIVER COAL COMPANY, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant. | Surface Mining Control and Reclamation Act of 1977, Pub. L. No. 95-87, 91 Stat. 445 (codified as amended at 30 U.S.C. §§ 1201–1328); *Consolidation Coal Co. v. United States*, No. 01-254C (Fed. Cl. filed Apr. 27, 2001); abandoned mine land ("AML") fee is not unconstitutional; Export Clause provides a self-executing cause of action; AML fee does not violate the Takings Clause; Court of Federal Claims has Tucker Act jurisdiction over claims alleging the AML fee violates the Export Clause; summary judgment; claims barred by controlling precedent. |

John Y. Merrell, Jr., Merrell & Merrell, P.C., McLean, Va., for plaintiff.

Tara K. Hogan, Trial Attorney, Todd M. Hughes, Deputy Director, Jeanne E. Davidson, Director, Commercial Litigation Branch, Civil Division, Tony West, Assistant Attorney General, United States Department of Justice, Washington, D.C., for defendant. Daniel M. Kilduff, Office of the Solicitor, United States Department of the Interior, Washington, D.C., of counsel.

## OPINION AND ORDER

GEORGE W. MILLER, Judge

Plaintiff, Red River Coal Company, Inc., filed a complaint against the United States on July 31, 2001 (docket entry 1), which it amended on February 6, 2007 (docket entry 26-1), seeking reimbursement of $246,372.17 in fees it paid pursuant to the Surface Mining Control and Reclamation Act of 1977. *See* Am. Compl. 4–5. On October 26, 2001, an initial stay was granted (docket entry 7), which was subsequently extended on September 13, 2002 (docket entry 15) pending the resolution of *Consolidation Coal Co. v. United States*, No. 01-254C (Fed. Cl. filed Apr. 27, 2001). On June 13, 2011, the Supreme Court denied the plaintiffs' petition for a writ of certiorari in *Consolidation Coal*. *See Consolidation Coal Co. v. United States*, 131 S. Ct. 2990 (2011). Plaintiff subsequently filed a motion to continue the stay of proceedings (docket entry 40, Oct. 14, 2011), which the Court denied on January 31, 2012 (docket entry 47). On February 16, 2012, defendant filed a motion for summary judgment pursuant to Rule 56 of the Rules of the Court of Federal Claims ("RCFC") (docket entry 48). Plaintiff filed its response in opposition to defendant's motion for summary judgment on March 1, 2012 (docket entry 49),

and defendant filed its reply in support of its motion on March 6, 2012 (docket entry 50).  For the reasons set forth below, the Court **GRANTS** defendant's motion for summary judgment.

## I.       Background

### A.      Statutory and Regulatory History

In 1977, Congress passed the Surface Mining Control and Reclamation Act of 1977 ("SMCRA"), Pub. L. No. 95-87, 91 Stat. 445 (codified as amended at 30 U.S.C. §§ 1201–1328), which established the Abandoned Mine Reclamation Fund in order to, among other activities, restore land and water resources damaged by coal mining.  30 U.S.C. § 1231(a), (c).  This fund is supported in part by a reclamation, or abandoned mine land ("AML"), fee levied on coal mining operators.  *Id*. §§ 1231(b), 1232.  Pursuant to statute, "[a]ll operators of coal mining operations . . . shall pay to the Secretary of the Interior, for deposit in the fund, a reclamation fee" determined in part by the amount of "coal produced."[1]  *Id*. § 1232(a).  The statute does not define "coal produced" or explain when the fees are to be calculated.  *See id*. § 1232.  In December 1977, the Secretary of the Interior, acting through the Office of Surface Mining Reclamation and Enforcement ("OSM"), promulgated regulations providing that the fee on coal produced is to be calculated "by the weight and value at the time of initial bona fide sale, transfer of ownership, or use by the operator."  Abandoned Mine Reclamation Fund—Fee Collection and Coal Production Reporting, 42 Fed. Reg. 62713, 62715 (Dec. 13, 1977) (codified as amended at 30 C.F.R. § 870.12).  The regulations do not provide a definition for "coal produced."  *See* 30 C.F.R. § 870.

### B.      Case Law

In 2001, over sixty coal producers filed a complaint in the United States Court of Federal Claims.  *See* Complaint at 1–2, *Consolidation Coal Co. v. United States*, 54 Fed. Cl. 14 (2002) (No. 01-254C).  The plaintiffs challenged the constitutionality of the AML fees they paid for exported coal.  *Consolidation Coal Co.* ("*Consol. I*"), 54 Fed. Cl. at 15.  They alleged that the AML fee, as applied to exported coal, violated the Export Clause of the United States Constitution.[2]  *Id*.  The Court of Federal Claims originally dismissed the case for lack of subject matter jurisdiction.  *Id*. at 20.  The court held that jurisdiction in the Court of Federal Claims was improper because a provision of SMCRA provides for judicial review of regulations in the United States District Court for the District of Columbia when a petition for review is filed within sixty days following the enactment of the regulations.  *Id*. at 17, 19–20; *see* 30 U.S.C. § 1276(a)(1).

---

[1] At the time the complaint was filed, the statute provided for "a reclamation fee of 35 cents per ton of coal produced by surface coal mining and 15 cents per ton of coal produced by underground mining or 10 per centum of the value of the coal at the mine, as determined by the Secretary, whichever is less, except that the reclamation fee for lignite coal shall be at a rate of 2 per centum of the value of the coal at the mine, or 10 cents per ton, whichever is less."  30 U.S.C. § 1232(a) (2000).

[2] The Constitution provides that "[n]o Tax or Duty shall be laid on Articles exported from any State."  U.S. Const. art. I, § 9, cl. 5.

The United States Court of Appeals for the Federal Circuit reversed and held that the Court of Federal Claims possessed jurisdiction. *Consolidation Coal Co. v. United States* ("*Consol. II*"), 351 F.3d 1374, 1381 (Fed. Cir. 2003). Relying on *Cyprus Amax Coal Co. v. United States*, 205 F.3d 1369 (Fed. Cir. 2000), the court found that because the Export Clause provides a self-executing cause of action that mandates compensation, it provides the substantive right necessary for this court to have jurisdiction. *Consol. II*, 351 F.3d at 1379; *see Cyprus Amax Coal Co.*, 205 F.3d at 1376 ("[T]he [Export] [C]lause provides a cause of action to recover money that was unlawfully exacted through either a duty or a tax."). On remand, the Court of Federal Claims granted summary judgment for the plaintiffs, holding that the AML fee as applied to exported coal violated the Export Clause. *Consolidation Coal Co. v. United States* ("*Consol. III*"), 64 Fed. Cl. 718, 724–28, 733 (2005).

On appeal, the Federal Circuit addressed the constitutionality of SMCRA and employed the canon of constitutional avoidance[3] to find that "coal produced" referred only to "coal extracted." *See Consolidation Coal Co. v. United States* ("*Consol. IV*"), 528 F.3d 1344, 1347–48 (Fed. Cir. 2008). The court concluded that this determination was not "plainly contrary to the intent of Congress," *id*. at 1347 (quoting *Edward J. DeBartolo Corp. v. Fla. Gulf Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988)) (internal quotation marks omitted), and therefore was "the only reasonable construction which preserves the constitutionality of the statute." *Id*. at 1348. The court's interpretation thus avoided a conflict between SMCRA and the Export Clause. *See id*. at 1347. The court acknowledged that the AML fee would be unconstitutional if an alternative interpretation were adopted that included both the extraction and sale of coal. *Id*. The court thus reversed the decision in *Consol. III* and remanded the case to the Court of Federal Claims. *Id*. at 1348.

On remand, the plaintiffs argued that the Federal Circuit addressed only the constitutionality of SMCRA and that the OSM regulations deferring the calculation of the AML fee until the time of sale violated the Export Clause and therefore were unconstitutional. *See Consolidation Coal Co. v. United States* ("*Consol. V*"), 86 Fed. Cl. 384, 385 (2009). The Court of Federal Claims disagreed and granted the defendant's motion for summary judgment, interpreting the Federal Circuit's opinion in *Consol. IV* as having addressed the OSM regulations as well as SMCRA. *Id*. at 389–90. On appeal, the Federal Circuit held that the OSM regulations did not violate the Export Clause and were therefore constitutional. *Consolidation Coal Co. v. United States* ("*Consol. VI*"), 615 F.3d 1378, 1381–82 (Fed. Cir. 2010). The court also held that the time of fee calculation did not affect the fact that the liability for the fee accrued at the time of extraction. *Id*. at 1382. The plaintiffs' subsequent combined petition for a rehearing and a rehearing en banc was denied, *see id*. at 1378, as was their petition for a writ of certiorari to the Supreme Court, *Consolidation Coal Co.*, 131 S. Ct. 2990.

---

[3] Constitutional avoidance "is a tool for choosing between competing plausible interpretations of a statutory text, resting on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts." *Clark v. Martinez*, 543 U.S. 371, 381 (2005).

C.      *Pending Action*

On July 31, 2001, plaintiff filed a complaint in this court alleging that the AML fee, as applied to coal that is exported from the United States, violates the Export Clause of the United States Constitution.  Am. Compl. ¶ 16.  Plaintiff also claims that the "unconstitutional exaction of the Coal Reclamation Fee on coal sold for export violates the Takings Clause of the Fifth Amendment of the United States Constitution."[4]  *Id.* ¶ 20.  Defendant addresses plaintiff's second claim as including both a Takings Clause claim as well as an illegal exaction claim.  Def.'s Mot. Summ. J. 8.

Plaintiff's case was stayed pending the resolution of *Consolidation Coal*.[5]  Following the Supreme Court's denial of the plaintiffs' petition for a writ of certiorari in *Consolidation Coal*, plaintiff in this case requested a stay pending the resolution of *Coal River Energy, LLC v. Salazar*, No. 11-01648 (D.D.C. filed Sept. 13, 2011), and the subsequent resolution by the Supreme Court of any circuit split that might theoretically result (docket entry 40, Oct. 14, 2011).  The Court denied the motion, *see* Jan. 31, 2012 Opinion and Order 2, and defendant filed a motion for summary judgment.

## II.     Discussion

Summary judgment is appropriate when there exists "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  RCFC 56(a).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Curtis v. United States*, 168 F. Supp. 213, 216 (Ct. Cl. 1958) ("A material fact is one that will make a difference in the result of the case."); *Rogers v. United States*, 101 Fed. Cl. 287, 292 (2011) (citing *Anderson*, 477 U.S. at 247).  "[A]ll evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable factual inferences should be drawn in favor of the nonmoving party."  *Dairyland Power Coop. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994) (citing *Anderson*, 477 U.S. at 255).  The Court of Federal Claims is bound by the decisions of the Supreme Court, the Federal Circuit, and the Federal Circuit's predecessor, the Court of Claims.  *See Coltec Indus., Inc. v. United States*, 454 F.3d 1340, 1353 (Fed. Cir. 2006) (citing *First Hartford Corp. Pension Plan & Trust v. United States*,

----

[4] The Fifth Amendment provides that private property shall not "be taken for public use, without just compensation."  U.S. Const. amend. V.

[5] An initial stay was granted to plaintiff on October 26, 2001, after which plaintiff attempted to consolidate its case with *Consolidation Coal*.  The motion to consolidate was denied on November 29, 2001 (docket entry 11).  The case was then stayed pending the resolution of the original appeal in *Consolidation Coal*.  A joint motion to stay the proceedings pending the final resolution of the liability issue in *Consolidation Coal* was granted on April 5, 2004 (docket entry 22).  A subsequent motion to continue the stay was granted on May 26, 2009 (docket entry 29) with an order that the parties file a joint status report within 20 days of final resolution of the liability issue in *Consolidation Coal*.  The parties filed the joint status report on July 5, 2011 (docket entry 30) indicating the liability issue was finally resolved.

194 F.3d 1279, 1290 n.3 (Fed. Cir. 1999)). Both parties agree that the decisions of the Federal Circuit in *Consol. IV* and *Consol. VI* are on point and constitute binding precedent. *See* Def.'s Mot. Summ. J. 6 ("This Court must now follow that straightforward precedent."); Pl.'s Resp. to Def.'s Mot. Summ. J. 9 ("Plaintiff recognizes that this Court must follow the decisions of the Federal Circuit.").

> A.    *Defendant Is Entitled to Summary Judgment Because the Federal Circuit Has Already Determined the Constitutionality of SMCRA and the OSM Regulations*

In support of its argument that the Court should not adhere to Federal Circuit precedent, plaintiff contends that the Federal Circuit wrongly decided *Consol. IV* and *Consol. VI*. This Court need not consider arguments regarding alleged mistakes by the Federal Circuit. *See Banks v. United States*, 76 Fed. Cl. 686, 691 (2007) ("Because the Federal Circuit is the appeals court for the Court of Federal Claims, this court will revisit an issue decided by the Federal Circuit only if changed circumstances in law or evidence make the Federal Circuit's decision inapposite." (citation omitted)). Moreover, plaintiff concedes that this Court *must* follow the decisions of the Federal Circuit. *See* Pl.'s Resp. to Def.'s Mot. Summ. J. 27. Plaintiff does not dispute that *Consol. IV* and *Consol. VI* decided the same issues that are before the Court in this case, and it does not attempt to distinguish this case on its facts. *Id*. at 8. For those reasons, this Court finds plaintiff's argument that the Federal Circuit wrongly decided previous cases to be unpersuasive. *See generally Consol. VI*, 615 F.3d 1378; *Clinchfield Coal Co. v. United States*, No. 02-69 C, 2012 WL 1957630 (Fed. Cl. May 31, 2012) (granting summary judgment because the legal issues were already decided by the Federal Circuit in *Consol. IV* and *VI*); *Consolidation Coal Co. v. United States*, Nos. 07-00266C, 05-01211C, 05-00929C, 09-00734C, 09-00770C, 05-01284C, 2012 WL 1026966 (Fed. Cl. Mar. 28, 2012) (granting summary judgment in an analogous action relying on Federal Circuit precedent in *Consol. IV* and *VI*).

Plaintiff also argues that the decision of the United States District Court for the District of Columbia in *Drummond Coal Co. v. Hodel*, 610 F. Supp. 1489 (D.D.C. 1985), and the affirming opinion of the Court of Appeals for the District of Columbia Circuit, 796 F.2d 503 (D.C. Cir. 1986), confirm that the AML fee is a tax on the sale of exported coal. Pl.'s Resp. to Def.'s Mot. Summ. J. 15–16. In *Drummond*, the plaintiff claimed that the OSM regulations exceeded the Secretary of the Interior's statutory authority under SMCRA "because it include[d] within the material taxed 'excess' moisture attributable to post-excavation rainfall or washing, which . . . is not properly regarded as part of 'coal.'" 796 F.2d at 504. The district court ultimately concluded, and the D.C. Circuit affirmed, that "coal produced" "could reasonably be interpreted to include the entire process of extracting and selling coal," thereby including the "excess" moisture,[6] and, thus, the Secretary did not exceed his authority by promulgating regulations

---

[6] The original regulations implemented by OSM under SMCRA were not clear, so Drummond and at least five other Alabama companies interpreted the regulations to be similar to a state tax that allowed for "coal operators to deduct the weight of 'excess' moisture—moisture in excess of 2.88% of the total weight of taxable coal." *Drummond*, 796 F.2d at 504–05. When OSM discovered Drummond and other companies were making deductions, it proposed new regulations to clarify its position. *Id*. The amended regulation read, "[i]mpurities, including water, that *have not* been removed prior to the time of initial bona fide sale, transfer of ownership, or use by the operator *shall not* be deducted from the gross weight." 30 C.F.R.

reflecting this interpretation. *Drummond*, 610 F. Supp. at 1497–1505; *see Drummond*, 796 F.2d at 507–08.

The Federal Circuit has already addressed plaintiff's argument and distinguished the decision in *Drummond* from its decision in *Consol. IV*. The *Drummond* court determined whether impurities such as water were reasonably included within the statutory language "coal produced." *Consol. IV*, 528 F.3d at 1348. The court was not interpreting SMCRA in light of a potential conflict with the Export Clause. *Id.* at 1347. The Federal Circuit noted that the *Drummond* court found the statutory language to be ambiguous. *Id.* at 1347–48 (citing *Drummond*, 796 F.2d at 505). The *Drummond* court did not conclude that "coal produced" included the sale of coal, but that the Secretary's interpretation that the term included the weight of water and other impurities was reasonable. *Id.* at 1348. For that reason, the court gave *Chevron* deference to the interpretation of "coal produced" used by the Secretary in implementing the OSM regulations. *See Drummond*, 796 F.2d at 506–08. When faced with a possible constitutional conflict—as was the case in *Consol. IV*—a court must interpret an ambiguous statute so as to give it the "only reasonable construction which preserves the constitutionality of the statute." *Consol. IV*, 528 F.3d at 1348. Therefore, because of the Federal Circuit's decision in *Consol. IV*, plaintiff's argument that the Court follow the precedent set by the court in *Drummond* is unpersuasive.

Similarly, the Federal Circuit has already addressed plaintiff's argument that the OSM regulations amount to an unconstitutional tax on exported coal. Plaintiff contends that OSM has consistently imposed the AML fee "on coal when sold, rather than when extracted, and interpreted the statutory language to apply to the sale of coal," which shows that the regulation is unconstitutional. Pl.'s Resp. to Def.'s Mot. Summ. J. 16. In *Consol. V*, the Court of Federal Claims determined that *Consol. IV* had addressed and resolved the constitutionality of *both* the reclamation fee statute and its implementation through OSM regulations. *Consol. V*, 86 Fed. Cl. at 389. On appeal, the Federal Circuit directly addressed plaintiff's argument that the OSM regulations constitute a tax on "coal sold" rather than "coal extracted" regardless of the meaning of "coal produced" in SMCRA because the OSM regulations call for the calculation of the AML fee at the time of sale. *Consol. VI*, 615 F.3d at 1381. The Federal Circuit concluded that the "timing of the tax 'mitigate[s] the burden' on manufacturers and 'indicates no purpose to impose the tax upon . . . sale.'" *Id.* at 1381–82 (quoting *Liggett & Myers Tobacco Co. v. United States*, 299 U.S. 383, 386 (1937) (alterations in original)). The court held that the "liability incurs at the time of extraction, and OSM merely collects the fee at the time of sale." *Id.* at 1382. The Federal Circuit again utilized the doctrine of constitutional avoidance and held that the OSM regulations apply to "coal extracted" and therefore do not violate the Export Clause. *Id.* Thus,

---

§ 870.12(b)(3)(i) (1982). *Drummond* hinged upon the interpretation of the statute's language "coal produced." Finding the phrase ambiguous, and not finding a contrary congressional intent within the legislative history, the D.C. Circuit agreed with the district court and deferred to the Secretary's construction of the statutory language. *Drummond*, 796 F.2d at 504–05. The court found that the Secretary's construction could be inferred from the 1982 amendment to the OSM regulations, which adopted an interpretation of the statutory language that defined "production . . . to include the entire process of extracting and selling coal, complete from pit to buyer's door." *Drummond*, 610 F. Supp. at 1497–98; *see Drummond*, 796 F.2d at 505.

plaintiff's argument that the OSM regulations constitute an unconstitutional tax on exported coal fails.

Finally, plaintiff argues that *Consol. VI* was wrongly decided because of the Federal Circuit's reliance on *Liggett & Myers Tobacco Co.*, 299 U.S. 383. Pl.'s Resp. to Def.'s Mot. Summ. J. 20–22. In *Liggett*, a tobacco manufacturer challenged a statute that placed a tax "[u]pon all tobacco and snuff manufactured in or imported into the United States, and . . . sold by the manufacturer or importer, or removed for consumption or sale." *Liggett & Myers Tobacco Co.*, 299 U.S. at 384 (quoting Revenue Act of 1926, Pub. L. No. 69-20, § 401, 44 Stat. 9, 88 (codified at I.R.C. § 700(a) (1934))) (internal quotation marks omitted). The Supreme Court held that the tax was on the manufacture of tobacco, and "the effect upon the purchaser was indirect and imposed no prohibited burden." *Id.* at 386. The fact that the time for paying the tax was upon either sale or removal "indicate[d] no purpose to impose the tax upon either sale or removal." *Id.* The Federal Circuit determined that the tax in *Liggett* was analogous to the AML fee. *See Consol. VI*, 615 F.3d at 1382. The court found that the *Liggett* court "did not differentiate between an organic product like tobacco that could change weight and other products that could not." *Id.* The Federal Circuit "[saw] no reason to do so" in *Consol. VI. Id.* Plaintiff's contention that *Liggett* differs both doctrinally and factually from the situation presented in *Consol. VI* and in this case is therefore unpersuasive.

B.      *Plaintiff's Takings or Illegal Exaction Claim Fails*

Plaintiff argues that the "unconstitutional exaction of the [AML fee] on coal sold for export violates the Takings Clause of the Fifth Amendment of the United States Constitution, which provides, 'nor shall private property be taken for public use without just compensation.'" Am. Compl. ¶ 20. Defendant contends that plaintiff abandoned its takings claim by not mentioning that claim in its response to defendant's motion for summary judgment. Def.'s Reply to Pl.'s Resp. to Def.'s Mot. Summ. J. 2. However, this Court need not address the issue of waiver because plaintiff's takings claim fails on the merits.

There is no genuine dispute as to any material fact regarding plaintiff's claim that the AML fee constitutes a taking. A takings claim requires that a plaintiff identify a property "interest that has allegedly been taken by operation of [an] Act." *See Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 294 (1981). In this instance, plaintiff's property interest is monetary, and the alleged taking is effectuated by the AML fee. The Federal Circuit has found that it is bound by the Supreme Court's opinions in *Eastern Enterprises v. Apfel*, 524 U.S. 498 (1998), in which five justices agreed that "regulatory actions requiring the payment of money are not takings."[7] *Commonwealth Edison Co. v. United States*, 271 F.3d 1327, 1339 (Fed. Cir. 2001) (en banc).

---

[7] In *Eastern Enterprises*, "the Supreme Court confronted a constitutional challenge to the retroactive liability provisions of the Coal Industry Retiree Health Benefit Act of 1992, codified at 26 U.S.C. §§ 9701–9722 (the 'Coal Act')." *Commonwealth Edison Co. v. United States*, 271 F.3d 1327, 1339 (Fed. Cir. 2001) (en banc); *see E. Enters.*, 524 U.S. at 503–04. Five members of the court rejected the idea that an obligation to pay money amounted to a taking. The plurality opinion, written by Justice O'Connor and joined by three other justices, "concluded that the retroactive impact of the Coal Act as applied to [the plaintiff] resulted in an unconstitutional

*Commonwealth Edison Co*. involved regulations that required domestic utility providers benefitting from government uranium enrichment facilities to make payments to a Uranium Enrichment Decontamination and Decommissioning Fund. *Id*. at 1333. The Federal Circuit held that "while a taking may occur when a specific fund of money is involved, the mere imposition of an obligation to pay money . . . does not give rise to a claim under the Takings Clause of the Fifth Amendment."[8] *Id*. at 1340.

Moreover, in a different opinion, the Federal Circuit directly addressed payments alleged to be unconstitutional under the Export Clause. *See U.S. Shoe Corp. v. United States*, 296 F.3d 1378, 1381–84 (Fed. Cir. 2002). In that case, the plaintiff sued to recover taxes paid under the Harbor Maintenance Tax, I.R.C. §§ 4461–4462 (2000), which was levied on commercial cargo for the use of certain ports. *U.S. Shoe Corp.*, 296 F.3d at 1381. The court found the statute violated the Export Clause, but not the Takings Clause. *Id*. at 1383. Taxation, the court held, is not a *per se* taking because money is private property that cannot be physically occupied by the government. *Id*. (citing *United States v. Sperry Corp.*, 493 U.S. 52, 62 n.9 (1989)). Taxation is not a regulatory taking because "[r]egulatory actions requiring the payment of money are not takings." *Id*. (quoting *Commonwealth Edison Co.*, 271 F.3d at 1339) (internal quotation marks omitted). Accordingly, there is no genuine dispute as to any material fact regarding whether the AML fee as applied to plaintiff constitutes a taking.[9]

---

[8] taking of property because it placed a 'severe, disproportionate and extremely retroactive burden on [the plaintiff].'" *Commonwealth Edison Co*., 271 F.3d at 1339 (quoting *E. Enters.*, 524 U.S. at 538 (plurality opinion)). Justice Kennedy, in his concurrence, disagreed that the act in that case, which required coal operators to fund future health benefits of retired employees, constituted an unconstitutional taking because it imposed a financial burden without regard to property. *Id*.; *E. Enters.*, 524 U.S. at 540 (Kennedy, J., concurring in judgment and dissenting in part). The four dissenting justices (Justices Stevens, Souter, Ginsberg, and Breyer) agreed with Justice Kennedy that the Takings Clause was not implicated by an obligation to pay a fee. *Commonwealth Edison Co*., 271 F.3d at 1339 (citing *E. Enters.*, 524 U.S. at 554 (Breyer, J., dissenting)). "Thus, five justices of the Supreme Court in *Eastern Enterprises* agreed that regulatory actions requiring the payment of money are not takings." *Id*. The Federal Circuit agreed with "the prevailing view that [it was] obligated to follow the views of that majority" of justices. *Id*.; *see also id*. at 1339 n.10 (collecting cases adopting the prevailing view).

[8] The Supreme Court held in *Phillips v. Washington Legal Foundation* that interest generated by an Interest on Lawyers Trust Account ("IOLTA") "is the 'private property' of the owner of the principal" subject to the Takings Clause of the Constitution. 524 U.S. 156, 172 (1998). The Federal Circuit recognized that the case before it did not involve a similar fund, and, therefore, *Phillips* did not apply. *See Commonwealth Edison, Co*., 271 F.3d at 1338, 1340. Likewise, *Phillips* does not apply here because this case does not involve a fund similar to an IOLTA.

[9] Several circuits have held that the AML fee is a tax. *See, e.g., United States v. Ringley*, 985 F.2d 185, 187–88 (4th Cir. 1993); *United States v. Tri-No Enters., Inc*., 819 F.2d 154, 159 (7th Cir. 1987); *United States v. River Coal Co.*, 748 F.2d 1103, 1106 (6th Cir. 1984). Even if the AML fee were not a tax, the imposition of the fee would not effect a taking pursuant to Federal Circuit precedent. *See Commonwealth Edison Co.*, 271 F.3d at 1340.

Additionally, plaintiff's claim that the AML fee amounts to an illegal exaction does not present a genuine dispute as to any material fact. An "illegal exaction" occurs when the government has "improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation." *Norman v. United States*, 429 F.3d 1081, 1095 (Fed. Cir. 2005) (quoting *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1007–08 (Ct. Cl. 1967)) (internal quotation marks omitted). The Federal Circuit has declared that the AML fee does not violate the Export Clause and is therefore constitutional. *See Consol. VI*, 615 F.3d at 1381–82. Because the court has declared the AML fee does not violate the Constitution, and nothing suggests that the regulation is otherwise illegal, there can be no "illegal exaction" claim.

C.    *The Court Has Jurisdiction Over Plaintiff's Claims*

Finally, in its motion for summary judgment, defendant argues that the Court does not have jurisdiction over plaintiff's claims. Under § 1276(a)(1) of SMCRA, "[a]ny action by the Secretary promulgating national rules or regulations . . . shall be subject to judicial review in the United States District Court for the District of Columbia Circuit" if a petition for review is filed "within sixty days from the date of such action." 30 U.S.C. § 1276(a)(1). Defendant contends that, because plaintiff claims that the AML fee regulations are unlawful, the Court should follow *Amerikohl Mining Co. v. United States*, 899 F.2d 1210 (Fed. Cir. 1990), and find that it lacks jurisdiction because plaintiff's claims are untimely and have been filed in the wrong court. Def.'s Mot. Summ. J. 10. In *Amerikohl Mining Co*., the Federal Circuit held that "the plain meaning of the language in section 1276(a)(1) [demonstrated] that Congress intended the District Court for the District of Columbia to be the exclusive forum for challenging national rules and regulations promulgated under the SMCRA." 899 F.2d at 1213. Therefore, the Federal Circuit dismissed for lack of jurisdiction. *Id*. at 1215.

The Federal Circuit addressed defendant's argument in *Consol. II*, in which it reaffirmed its holding in *Cyprus Amax Coal Co.*[10] In *Consol. II*, the court held that the "Export Clause provides . . . coal producers with an independent self-executing cause of action that allows for Tucker Act jurisdiction in the Court of Federal Claims." 351 F.3d at 1379. The Federal Circuit distinguished *Consol. II* from *Amerikohl Mining Co.* by noting that "the cause of action asserted in *Amerikohl* was not based on the Constitution or any federal law other than the SMCRA itself," whereas the *Consol. II* court dealt with the relationship between SMCRA and the Export Clause. *Id*. at 1380. Accordingly, the Federal Circuit has made clear that the Court of Federal Claims has

---

[10] *Cyprus Amax Coal Co.* dealt with a challenge to the Coal Tax, 26 U.S.C. § 4121, that did not exempt exported coal from the tax. 205 F.3d at 1371. The plaintiff alleged that the tax violated the Export Clause. *Id*. The Federal Circuit stated that the Tucker Act is purely jurisdictional and "on its own predicate, it does not enable a party to recover monetary damages from the United States." *Id*. at 1373. The Tucker Act requires "a complementary substantive right found in another source of federal law, such as the Constitution, federal statutes, or executive regulations." *Id*. This was satisfied by the Export Clause, which, "given a fair textual interpretation, . . . leads to the ineluctable conclusion that the clause provides a cause of action with a monetary remedy." *Id*. The court concluded that "a party can recover for payment of taxes under the Export Clause independent of the tax refund statute" because a cause of action based on the Export Clause is self-executing. *Id.* at 1374.

jurisdiction over plaintiff's claims. *See Consol. II*, 351 F.3d at 1380–81; *see also Clinchfield Coal Co.*, 2012 WL 1957630, at *2; *Consolidation Coal Co.*, 2012 WL 1026966, at *4–6.

Defendant also contends that *Consol. II* was superseded by the intervening Supreme Court decision in *United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1 (2008). Def.'s Mot. Summ. J. 10–11. The Supreme Court in *Clintwood Elkhorn* held that a tax claim based on the Export Clause had to be filed with the Internal Revenue Service within the statute of limitations set forth in the Internal Revenue Code before being filed with the Court of Federal Claims. 553 U.S. at 4–5, 14. Defendant argues the Court's decision in *Clintwood Elkhorn* "suggests that courts must look to see if claims are covered by a stricter statute of limitation" and thus implies that SMCRA's sixty-day time limit to challenge a regulation bars plaintiff from relying upon the six-year limitation set forth in the Tucker Act. Def.'s Mot. for Summ. J. 11.

Nonetheless, the Federal Circuit found that the Court of Federal Claims has Tucker Act jurisdiction over claims alleging that the AML fee violates the Export Clause. *See Consol. II*, 351 F.3d at 1379. This court is bound to follow Federal Circuit precedent unless "the circuit's precedent is expressly overruled by statute or by a subsequent Supreme Court decision." *Strickland v. United States*, 423 F.3d 1335, 1338 n.3 (Fed. Cir. 2005). Because the Supreme Court did not expressly overrule *Consol. II*, the Court finds that binding precedent requires the conclusion that the Court of Federal Claims has jurisdiction to hear this case under the Tucker Act. *See Consolidation Coal Co.*, 2012 WL 1026966, at *6.

## CONCLUSION

In view of the foregoing, the Court finds that plaintiff's claims do not raise a genuine issue of any material fact, and defendant is entitled to judgment as a matter of law. Accordingly, the Court **GRANTS** defendant's motion for summary judgment. The Clerk of the Court shall enter judgment in favor of defendant.

**IT IS SO ORDERED.**

 s/ George W. Miller
GEORGE W. MILLER
Judge